UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MICHELLE L SMITH,

    Plaintiff,

v.                                      CASE NO. 3:22cv21728-MCR-ZCB

USAA CASUALTY INSURANCE
COMPANY,

    Defendant.
_____/

## ORDER

Plaintiff Michelle L. Smith brought suit against USAA Casualty Insurance Company ("USAA") in the Circuit Court of the First Judicial Circuit in and for Santa Rosa County, Florida, alleging breach of her homeowner's insurance contract after her home was damaged by Hurricane Sally in 2020. USAA removed the case to federal court, invoking diversity jurisdiction.[1] *See* U.S.C. §§ 1332(a), 1441, 1446. Before the close of discovery, Smith filed a Motion for Partial Summary Judgment, arguing that she is entitled to the face value of the policy because the dwelling is a "total loss" or "constructive total loss" under Florida law and the policy terms covering the dwelling property damage. ECF No. 14. USAA opposed the motion

---

[1] The Court is satisfied that diversity jurisdiction exists. The Notice of Removal states that Michelle Smith is a citizen of Florida, that USAA is incorporated in the State of Texas and has its principal place of business in Texas, and that the amount in controversy exceeds $75,000, which is apparent on the face of the Complaint. *See* 28 U.S.C. § 1332(a).

as premature. Following discovery, USAA filed a cross motion for partial summary judgment on the issue of liability for the property damage, arguing that it is not liable for policy limits under either Florida law or the policy because the property can be repaired. ECF No. 32. Having fully considered the arguments and the record, the Court denies Smith's motion and grants USAA's motion in part.

I.  **Background**

The undisputed facts include that Smith owns residential property at 2616 Bayshore Parkway in Milton, Florida, that was damaged on September 16, 2020, by wind, rain, and storm surge from Hurricane Sally. The home is a piling structure with breakaway walls and flood vents on the ground floor and the living space on the elevated second floor. The property is located along a body of water and lies within a designated 100-year flood hazard area, which subjects it to special building and development restrictions under the Floodplain Management and Resource Protection Ordinance for Santa Rosa County, Florida.

At the time of damage, the property was insured under a homeowner's policy issued by USAA, Policy No. CIC 00675 12 33 90A ("Policy"), in effect from July 31, 2020 through July 31, 2021. The Policy provides "Coverage A—Dwelling Protection" that insures against damage caused by covered perils (including wind)

up to a limit of $428,000, minus a deductible.[2]  If a covered peril causes a "total loss" as defined in the Policy, USAA will pay the replacement cost.[3]  ECF No. 32–1 at 15.  The Policy also includes Building Ordinance and Law coverage, which provides additional coverage of up to 5% of the Coverage A amount for the increased costs incurred to comply with an ordinance or law governing the construction, repair or demolition of damaged property.  ECF No. 32–1 at 12.  The Property was separately insured against flood through a policy issued under the National Flood Insurance Program ("NFIP").

Smith timely notified USAA of the damage from Hurricane Sally.  USAA sent Allcat, a USAA Service Provider, to inspect the property, and it estimated the replacement cost damages from wind and rain in the amount of $71,709.66.  On November 3, 2020, Smith received notice that USSA would issue her a check for the

---

[2] The Policy also provides "Coverage B – Other Structures Protection" in the amount of $42,800; "Coverage C – Personal Property Protection" in the amount of $321,000; and "Coverage D – Loss of Use Protection" up to $85,600, which are not at issue in the pending motions.

[3] A "Valuation Clause" defines "total loss" as damage to a covered dwelling (1) "to such an extent that the remnant of the dwelling or other structure cannot be repaired back to its original condition;" (2) "where, though only partly damaged . . . there is an ordinance or law prohibiting its repair;" and (3) "where, though only partly damaged, the cost to repair is greater than the limit stated on the policy."  ECF No. 32–1 at 15–16.  Also, if a "total loss" is caused by both a covered peril (such as wind) and a noncovered peril (such as flood), the insurer's liability is limited to the amount of loss caused by the covered peril; except, if the covered peril alone would have caused the total loss, then USAA will pay the amount for which the property was insured.  *Id.* at 16.

property damage in the amount of $48,663.45, representing the replacement cost less depreciation and a deductible.[4]

Smith disagreed with the amount of the property damage payment and retained two firms to inspect the property and estimate damages. First, Paul Bement of Addison Riley inspected the property on December 15, 2021, and estimated total damages in the amount of $127,499.01. Then on March 23, 2022, Halley Lovato of HighPointe DBR, Inc. inspected the property and estimated the total damages from flood, wind, and rain at $189,184.74, with the portion attributable to covered perils of wind and rain totaling $157,967.76. In Lovato's opinion, the non-flood damages exceeded 50% of the property's pre-loss appraised value. ECF No. 14–5 at 6. He explained that if the County issued a "substantial damage determination," finding the damage exceeds 50% of the home's value, then the home must be repaired in compliance with the current floodplain and building code requirements, which in this instance would require that the home be either demolished or elevated.[5] Lovato

---

[4] The flood damages and settlement were separately determined. USAA sent another adjuster in February 2022 regarding the NFIP flood insurance policy, and flood damages were estimated at $9,682.02. On May 2, 2022, USAA sent a check for $8,432.02 as the flood claim payment. Smith agrees that the flood damage was minor and did not dispute the payment.

[5] At the time of this incident, the home met the elevation requirements of the flood zone ordinance in effect (12 feet). The zone and elevation requirements changed in November 2021 and now require elevation of the lowest structural level to 16 feet.

CASE NO. 3:22cv21728-MCR-ZCB

stated that the home could be elevated but it would be expensive. He estimated the total cost to demolish and rebuild the dwelling at $567,000 and the cost to elevate and repair the Property to current building codes at $567,584.88.[6] Lovato stated during his deposition that he would not attempt to elevate and repair the house "unless the people who were doing it didn't care what it was going to cost." ECF No. 31–1 at 108–09.

On August 8, 2022, Smith applied to the County for a "substantial damage determination" and provided Lovato's estimate to substantiate her claim. On August 15, 2022, based on Lovato's estimate, Karen Thornhill, Floodplain Manager for Santa Rosa County Development Services, issued a Notice of Determination on behalf of the County, finding that the combination of flood, wind, and storm surge during Hurricane Sally caused substantial damage exceeding 50% of the structure's pre-damage value.[7] The pre-damage value was $263,538. Fifty percent amounts to $131,769, and Lovato estimated the total damages as $189,184.74. ECF No. 14–4 at 4 (Notice of Determination); ECF No. 30 at 37 (Thornhill deposition testimony on how she determined market value). During her deposition, Thornhill described

---

[6] Lovato also testified by deposition on May 3, 2023, that in his opinion, the cost today to elevate and repair to current codes would be a little higher. ECF No. 31–1 at 106.

[7] The duties of the Floodplain Manager include conducting inspections, estimating market value, and preparing "substantial damage determinations." ECF No. 14–6 at 2–3.

CASE NO. 3:22cv21728-MCR-ZCB

her process for determining whether the property was substantially damaged. She did not personally inspect the property but considered the estimate that Smith provided and ran the information through FEMA's substantial damage estimator program. *See* ECF No. 30. Smith provided Thornhill with Lovato's estimate but did not include the Allcat estimate or the Addison Riley estimate. Thornhill testified that applicants are required to provide all estimates that they have and she had the ability to request additional estimates.[8] Thornhill agreed in her deposition that if she had received all three damages estimates, it was "possible" that her determination would have been different. *See* ECF No. 30 at 37-38, 53.

The Notice of Determination informed Smith that in light of this substantial damage determination, the structure must be removed from the floodplain, entirely demolished, or elevated so the lowest floor is above the 100-year flood elevation (16 feet), as required by the Santa Rosa County Floodplain Management Ordinance. ECF No. 14–4 at 4. Also, "all repairs, reconstruction, demolition and new construction" will require a building permit.[9] *Id.* Thornhill testified by deposition

---

[8] Thornhill did not request additional estimates in this case but testified that if she had received two diverging estimates, she would have requested a third. ECF No. 30 at 33-35. In light of the home's value, the Addison estimate from December 2021, shows only 49% damage; Thornhill said if this had been provided, she would have compared the itemized costs in the different estimates to see if one was more detailed.

[9] There is no dispute that the lowest level of Smith's house is not in compliance with the current 100-year flood plain elevation requirement of 16 feet. The County's flood zone maps

CASE NO. 3:22cv21728-MCR-ZCB

that Smith's house does not have to be demolished to comply and could instead be elevated and then repaired, although it would be expensive. ECF No. 30 at 50.

On September 9, 2022, Smith's counsel made a final demand for Coverage A policy limits plus Building Ordinance and Law coverage.[10] The demand letter cited the County's substantial damage determination that the damage exceeds 50% of the value and stated that because the determination requires demolition or elevation, the home is therefore a "constructive total loss," which requires USAA to pay policy limits under the Florida Valued Policy Law ("VPL"), Fla. Stat. § 627.702(1)(a).[11] USAA denied further payment on the claim. Smith then brought suit for breach of contract in October 2022, and filed an early motion for partial summary judgment and following discovery, USAA filed a cross-motion, both briefing the issue of

---

changed on November 19, 2021, over one year *after* Hurricane Sally damaged Smith's property, making her property now subject to this requirement. *See* ECF No. 30 at 53. Thornhill testified that Smith could have obtained a repair permit without elevating the home at any time prior to the effective date of the new flood zone map, November 1, 2021, but now—according to the substantial damage notice finding the damages exceed 50% of the pre-damage value—Smith cannot obtain a building/repair permit without elevating the structure in compliance with the Ordinance. ECF No. 30 at 83.

[10] Specifically, Smith demanded $400,736.55, consisting of Coverage A policy limits ($428,000) plus Building Ordinance and Law coverage ($21,400), less the $48,663.45, which USAA had previously paid. ECF No. ECF No. 1–5 at 75–76.

[11] The statute provides: "In the event of the total loss . . . the insurer's liability under the policy for such total loss, if caused by a covered peril, shall be in the amount of money for which such property was so insured as specified in the policy and for which a premium has been charged and paid." Fla. Stat. § 627.702(1)(a).

whether the property suffered a "constructive total loss" under Florida's VPL, or a "total loss" under the Policy, for purposes of holding USAA liable for policy limits under Coverage A—Dwelling Protection.

## II.  Discussion

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the burden to demonstrate that there is no genuine dispute of fact and that the non-movant has failed to establish an essential element of the claim.  *See Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If this burden is satisfied, then the non-movant must go beyond the pleadings and "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  The Court views all evidence in the light most favorable to the non-movant and draws all reasonable inferences in favor of the non-movant "to the extent supportable by the record." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007)).  When evaluating cross-motions for summary judgment, the Court applies the same standards, viewing the facts "in the light most favorable to the non-moving party on each motion." *James River Ins. Co. v. Ultratec Special Effects Inc.*, 22 F.4th 1246, 1251 (11th Cir. 2022).  Consequently,

"[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)[12]).

Florida law controls this insurance coverage dispute. An insurance policy is a contract, and breach of contract requires proof of three elements: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Cafe Int'l Holding Co. LLC v. Westchester Surplus Lines Ins. Co*. 536 F. Supp. 3d 1291, 1298 (S.D. Fla. 2021) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing Florida law)). The interpretation of an insurance contract under Florida law is a question of law for the court, decided after construing the policy in its entirety, consistent with the expressed intent of the parties. *Gulf Tampa Drydock Co. v. Great Atlantic Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985).

As noted above, Florida's VPL requires an insurer to pay policy limits for the dwelling in the event a covered peril, for which a premium was paid, causes a "total

---

[12] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) (adopting the case law of the former Fifth Circuit before October 1, 1981, as precedent in this Circuit).

loss." Fla. Stat. § 627.702(1)(a); *see supra* Note 11; *see also Florida Farm Bureau Cas. Ins. Co. v. Cox*, 967 So. 2d 815, 818 (Fla. 2007) (Florida's VPL "requires insurers to set the value of property which was insured" in the event a total loss occurs); *Ceballo v. Citizens Prop. Ins. Corp.*, 967 So. 2d 811, 814 (Fla. 2007) (the VPL fixes the value of the property in the event of a total loss, without the need of any additional proof and unrelated to any additional or supplemental coverage that may also apply). Originally enacted in 1899, the VPL overrides any conflicting policy terms. *Freeman v. Am. Integrity Ins. Co. of Fla.*, 180 So. 3d 1203, 1207 (Fla. 1st DCA 2015). Although the VPL does not define "total loss," case law establishes that a total loss occurs when a building has lost its identity such that it cannot possibly be designated as a building.[13] *See Lafayette Fire Ins. Co. v. Camnitz*, 149 So. 653, 654-55 (Fla. 1933); *see also Castro v. People's Tr. Ins. Co.*, 315 So. 3d 761, 765 (Fla. 4th DCA 2021) (noting property is considered a total loss when there is no possibility of repair). Florida courts also have determined that a "constructive total loss" gives rise to liability under the statute "when the building, although still

---

[13] The Policy at issue includes a similar provision, stating USAA will pay the replacement cost, up to policy limits, if there is a total loss. The Policy defines "total loss," in relevant part, as including when a structure is only partly damaged but there is "an ordinance or law prohibiting its repair" or "the cost to repair is greater than the limit stated on the policy." ECF No. 32-1 at 15–16.

standing, is damaged to the extent that ordinances or regulations in effect prohibit or prevent the building's repair, such that the building has to be demolished." *Citizens Prop. Ins. Corp. v. Hamilton*, 43 So. 3d 746, 753 (Fla. 1st DCA 2010) (quoting *State Farm Fla. Ins. Co. v. Ondis*, 962 So. 2d 923, 925 (Fla. 1st DCA 2007), *rev'd on other grounds*, 979 So. 2d 930 (Fla. 2008)); *see also Florida Farm Bureau Cas. Ins. Co. v. Mathis*, 33 So. 3d 94, 96 (Fla. 1st DCA 2010) (jury was instructed that a "constructive total loss" occurs when a home "is damaged to the extent ordinances or regulations in effect require its demolition or prevent its repair"); *Netherlands Ins. Co. v. Fowler*, 181 So. 2d 692, 693 (Fla. 2d DCA 1966) (finding a condemnation order gave rise to liability under the VPL). District courts in this Circuit, applying Florida law, have likewise adopted the view that a demolition or condemnation order is necessary to create a constructive total loss for purposes of the VPL. *See Magaldi v. Safeco Ins. Co.*, Case No. 07-80618-civ-Hurley, 2009 WL 10668553, at *3 (S.D. Fla. Feb. 9, 2009) (finding no constructive total loss on undisputed evidence that the plaintiff always had the option of repairing, and rejecting a cost-benefit approach); *Greer v. Owners Ins. Co.*, 434 F. Supp. 2d 1267, 1280 (S.D. Fla. 2006) (finding no constructive total loss because the home was repairable, no regulation required demolition, and there was no structural damage).

CASE NO. 3:22cv21728-MCR-ZCB

A. **Smith's Motion for Partial Summary Judgment**

Smith asserts she is entitled to policy limits under Coverage A—Dwelling Protection, arguing that the undisputed facts show that a covered peril caused a "constructive total loss" of the property within the meaning of the VPL.[14] Relying on the County's substantial damage determination, Smith argues that a constructive total loss occurred because she is now prevented by that determination from repairing the home to its original pre-loss condition. Although USAA does not dispute the *existence* of the County's substantial damage determination, it does dispute the County's *valuation* of the damages. USAA asserts the decision is in question because Smith failed to provide Thornhill all of the estimates when asking her to make the substantial damage determination, and if a jury finds that the total damages are less than 50% of the home's pre-loss value, consistent with USAA's estimate from Allcat or Smith's first estimate from Addison (neither of which was provided to Thornhill), then compliance with the new ordinance is not required, and there could be no constructive total loss.

The Court agrees with USAA that because the valuation is in dispute, a question of fact precludes summary judgment in Smith's favor. Smith's argument

---

[14] It is undisputed that the majority of the damage resulted from wind, a covered peril.

CASE NO. 3:22cv21728-MCR-ZCB

hinges on her assertion that Thornhill's substantial damage determination prevents repair and is conclusive because the Floodplain Manager has sole discretion for the decision under the ordinance, and the decision makes all other estimates irrelevant. The Court is not persuaded. No provision of the ordinance or any case cited supports a finding that the County's substantial damage determination is conclusive for all purposes as to the extent of damage. To the contrary, "constructive total loss" under the VPL is a jury issue in Florida, and a substantial damage determination is deemed highly relevant to the issue, but not conclusive. *See Hamilton*, 43 So. 3d at 753 ("evidence of the substantial damage determination was entirely relevant to prove a constructive total loss."); *see also Greer*, 424 F. Supp. 2d at 1280 (stating a substantial damage determination requiring compliance with current building codes "does not necessarily render the plaintiffs' home a constructive total loss"). Significantly, the record here contains evidence that conflicts with and undermines the factual basis of Thornhill's determination. It is undisputed that Smith did not provide Thornhill with the estimates by Allcat and Addison—each of which estimated the total damages as less than 50% of the home's pre-loss value, and Thornhill testified that she requires applicants to provide all the estimates they have. She further testified that if she had known of the other estimates, her decision might have been different. The additional pre-existing estimates that Thornhill was not

CASE NO. 3:22cv21728-MCR-ZCB

allowed to review are not irrelevant and show that the extent of damage remains a question of fact.

Smith further argues that there is a constructive total loss under the VPL or alternatively, under the policy terms, because Lovato's uncontradicted estimates show that the cost to elevate and then repair the home exceeds both policy limits and the cost to demolish and rebuild. The Policy defines "total loss" in relevant part as including a situation where the cost to repair exceeds the policy limits. ECF No. 32–1 at 15–16. But the same question of fact over whether the value of the damages exceeds 50% of the value of the pre-loss structure precludes summary judgment on this ground as well under either the VPL or the Policy. Although Lovato's estimate on the cost to elevate and repair is not contradicted by any other estimate, there remains a fundamental dispute about whether elevation is required at all given the fact dispute created by Smith's failure to provide all estimates to Thornhill. If the jury determines that the cost to repair is less than 50% of the pre-loss value (as the Addison and Allcat estimates show and USAA contends), then there would be no need to comply with the current elevation ordinance, and thus, no need to consider this added cost. Smith's motion is denied.

## B.     USAA's Motion for Partial Summary Judgment

In support of its own motion for partial summary judgment, USAA argues that the undisputed facts establish the property is not a constructive total loss because the County's substantial damage determination does not require demolition, and there is no evidence that the property is unsafe and no testimony that the home must be demolished in order to elevate and comply with the ordinances.  USAA argues that the County's determination merely increases the cost by requiring compliance with the current elevation requirement, which does not equate with a constructive total loss under the VPL, citing *Greer*, 424 F. Supp. 2d at 1280.  According to USAA, this increased cost is covered by the additional Building Ordinance and Law coverage in the Policy, not the VPL.  Smith incorporates her previous arguments and contends that the property can be considered a constructive total loss when the property is substantially damaged by a covered peril and compliance with a current ordinance is required before repairs can be undertaken.  Smith argues the substantial damage determination is essentially a condemnation order because she cannot obtain a permit to repair unless she first elevates the property.

The Court concludes that even viewing the evidence in the light most favorable to Smith, USAA is entitled to partial summary judgment on this issue. Significantly, the substantial damage determination does not prevent repair.  Both

Thornhill and Smith's own expert, Lovato, said the home could be elevated to comply with the current code and then repaired, although it would be expensive (and in his opinion, impractical). Neither said that the home had to be demolished, and there is no evidence that the structure itself is unsafe. *See Magaldi*, 2009 WL 10668553, at *3 (finding no constructive total loss on undisputed evidence that the plaintiff always had the option of repairing); *Greer*, 424 F. Supp. 2d at 1280 (stating a constructive total loss occurs only if an ordinance or regulation actually prohibits or prevents repair, such that the home has to be demolished; finding no constructive loss where the county did not require demolition and the home had no structural or foundational damage). The Court agrees with USAA's argument that the cases cited by Smith, which found a total or constructive loss under the VPL based on a requirement to comply with an ordinance, are factually distinguishable in that they include additional circumstances not present here, such as that the building was structurally unsafe, that the building was condemned, that a "total loss" was not disputed, or that the building had to be torn down in order to elevate the site for compliance.[15] *See* ECF No. 32 at 20–21 (citing cases illustrating these distinctions).

---

[15] *See, e.g., Hamilton*, 43 So. 3d at 750 (insured's mobile home was completely washed away); *Mathis*, 33 So. 3d at 95 (structure deemed unsafe left no other option than to demolish); *Citizens Prop. Ins. Corp. v. Ueberschaer*, 956 So. 2d 483, 484 (Fla. 1st DCA 2007) ("substantial damage" determination found a total loss and insurer acknowledged the property was a total loss because "the only way for him to conform to current construction requirements was to demolish

While Smith cites evidence that she cannot repair the home without elevating it, the elevation requirement does not *prohibit* repair and thus does not establish a constructive total loss.

Smith argues that USAA's reliance on *Greer* is misplaced, citing distinguishable facts, such as that the Greers chose to demolish their home and rebuild even though it met the elevation requirements and thus could have been repaired without elevating. But the distinctions identified do not undermine the persuasive value of the case. Notably, here, as in *Greer*, at the time of the damage, the home met the current elevation standards and could have been timely repaired without first elevating the structure at any time before the new ordinance became effective in November 2021. *See Greer*, 434 F. Supp. 2d at 1280–82 (noting the damaged home met flood elevation levels at the time of the damage and concluding that a new law, enacted 16 months later, did not support finding a constructive total loss). The Court concludes as a matter of law, based on the undisputed facts construed in Smith's favor, that the property is not a "constructive total loss" for

---

the house and rebuild at or above the appropriate base flood elevation"), *rev'd on other grounds, decision quashed*, 979 So. 2d 929 (Fla. 2008); *Mierzwa v. Fla. Windstorm Underwriting Ass'n*, 877 So. 2d 774, 780 (Fla 4th DCA 2004) (Gross, concurring) (noting application of city ordinance created a constructive total loss because it required that the building be torn down and the site elevated), *disapproved and superseded by statute on other grounds*, *Cox*, 967 So. 2d at 821.

CASE NO. 3:22cv21728-MCR-ZCB

purposes of the VPL because it can be repaired as long as the new elevation requirements are met. USAA is entitled to partial summary judgment on this issue.

The Court makes no determinations regarding the extent of USAA's liability under the Policy, which will turn on the resolution of the disputed facts regarding the value of damages sustained.

Accordingly:

1. Plaintiff's Motion for Partial Summary Judgment, ECF No. 14, is **DENIED**.

2. USAA Casualty Insurance Company's Partial Motion for Summary Judgment, ECF No. 32, is **GRANTED in part** such that there is no "constructive total loss" for purposes of Florida's Valued Policy Law, and **DENIED in part** on issues related to liability under the Policy, including whether there is a "total loss" under the terms of the Policy.

**DONE AND ORDERED** this 6th day of September 2023.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**